Wayne K. Caldwell (I.S.B. 8095)
Aaron K. Bergman (I.S.B. 8878)
BEARNSON & CALDWELL, LLC
399 North Main, Suite 270
Logan, Utah 84321
(435)752-6300 – Telephone
(435)752-6301 - Facsimile
Email: wcaldwell@bearnsonlaw.com
Email: abergman@bearnsonlaw.com
With a copy to: bjensen@bearnsonlaw.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CODY SMITH and HOLLY SMITH, individually and for and on behalf of P.S., who is a minor, | Case No.: 1:25-cv-00052 |
| **Plaintiffs,** | **COMPLAINT** |
| vs. | **WITH** |
| JESS MCMURRAY, an individual; and SODA SPRINGS JOINT SCHOOL DISTRICT NO. 150, a public entity, | **JURY DEMAND** |
| **Defendants.** | |

COME NOW Plaintiffs, CODY SMITH and HOLLY SMITH, individually and for

and on behalf of their minor child, P.S., ("Plaintiffs" or "Smiths"), by and through their

legal counsel Aaron K. Bergman and the law firm of BEARNSON & CALDWELL, LLC,

and hereby complain against Defendants JESS MCMURRAY, an individual; and the SODA SPRINGS JOINT SCHOOL DISTRICT 150, an Idaho public entity, as follows:

## NATURE OF ACTION

This is a civil rights action seeking first prompt equitable relief from the Court, and second, damages for the violation of  P.S.'s civil rights under the Americans with Disabilities Act, section 504 of the Rehabilitation Act, and constitutional rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (§ 1983). This Complaint may be amended to add one or more additional parties or claims.

## PARTIES

1.     Plaintiff CODY SMITH is an individual residing in the County of Caribou, State of Idaho.

2.     Plaintiff HOLLY SMITH is an individual residing in the County of Caribou, State of Idaho.

3.     Plaintiff P.S. a minor individual residing in the County of Caribou, State of Idaho.

4.     Defendant JESS MCMURRAY ("McMurray") is an individual residing in the County of Caribou, State of Idaho.

5.     Defendant SODA SPRINGS JOINT SCHOOL DISTRICT NO. 150 (the "District") is a public entity operating chiefly in the County of Caribou, State of Idaho.

## JURISDICTION & VENUE

6.      This Court has original jurisdiction. See 28 U.S.C. § 1331 (federal question jurisdiction). The Court also has jurisdiction to issue declaratory relief under the Declaratory Judgment Act. See 28 U.S.C. § 2201.

7.      Venue in this Court is proper. See 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

8.      P.S. attends the Soda Springs High School, which is operated by the District.

9.      P.S. attends the Soda Spring High School and is a student of the District.

10.     P.S. is disabled, suffering from anxiety, depression, and Attention Deficit Hyperactive Disorder ("ADHD"). As a result of these disabilities, P.S. requires additional time to complete academic quizzes and tests, as well as a quiet environment when being academically tested.

11.     During the 2023-2024 school year, P.S.'s Freshman Year, Plaintiff Mrs. Smith asked the District, vis-à-vis its High School Principal, Defendant McMurray to provide P.S. with accommodations by way of a "§ 504 Plan."

12.     A section 504 Plan refers § 504 of the Rehabilitation Act, 29 U.S.C. § 794, which forbids discrimination of qualified individuals with a disability by any operation which receives federal financial assistance. The Federal regulations governing § 504 of the Rehabilitation Act provide that "[a] recipient that operates a public elementary or secondary education program or activity [i.e. high school] shall provide a free appropriate

public education to reach qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33. An "appropriate" education is one that, through "regular or special education and related aids and services" is "designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met[.]" *Id*. at § 104.33(b)(1). (brackets added).

13.    The Americans with Disabilities Act, which was enacted after the Rehabilitation Act, imposes no less of a standard of accommodation than the Rehabilitation Act. See 42 § U.S.C. 12201(a) ("nothing in this chapter shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. § 790 et seq) or the regulations issued by Federal agencies pursuant to such title" (parenthesis in original)).

14.    In response to Mrs. Smith's request to provide P.S. with a § 504 Plan, the District vis-a-vis Defendant McMurray informed Ms. Smith that a 504 Plan was unnecessary. The District reached this conclusion without any evaluation of P.S.'s disabilities or their impact on her education, as required by the Rehabilitation Act's governing regulations, 34 C.F.R. § 104.35.

15.    Even though a 504 Plan was unnecessary, Defendant McMurray stated, he and his staff would accommodate P.S. by allowing her to go to the school's Resource Room during testing. As promised, the accommodation was provided.

16.     At the outset of P.S.'s 2024-2025 Sophomore Year, Plaintiffs in writing withdrew their consent to allow P.S. to meet with the District's school counselor. P.S. had been able to be enrolled with a private counselor, which Plaintiffs had waited for months to achieve, and Plaintiffs did not wish there to be conflicting counseling received by their daughter.

17.     In response to the Plaintiffs' directive, the District's school counselor, without informing Plaintiffs, continued to meet with P.S. During those subsequent meetings, the school counselor deliberately encouraged P.S. to embellish disagreements she had had with her parents, and instructed P.S. to contact Child Protective Services, and wrote down for P.S. what to tell Child Protective Services.

18.     Child Protective Services promptly unsubstantiated the petty allegation of abuse / neglect, and P.S. then apologized to her parents, providing to them the written instructions that P.S. had received from the school counselor.

19.     Justifiably concerned that not only had the District's school counselor continued to privately meet with P.S. against Plaintiffs' consent, and that such had resulted in unfounded and manipulated reports being made to Child Protective Services, Plaintiff Mrs. Smith reported her concern to Defendant McMurray. Defendant McMurray disagreed that the District's counselor had done anything inappropriate or unprofessional, and became upset. Mrs. Smith became upset, and demanded that the District's counselor will not have further contact with P.S.

20.     Shortly after Mrs. Smith had reported her concern to Defendant McMurray, P.S. went to the Resource Room. P.S. was denied access.

21.     P.S. approached Defendant McMurray, and asked why she was not being allowed the accommodation of using the Resource Room.

22.     Principal McMurray responded that the accommodation was unnecessary, and that P.S. was "just lazy."

23.     P.S.'s grades declined.

24.     Plaintiffs returned from vacation, and the District refused to provide P.S. with additional time to prepare for final exams. The District also refused to provide P.S. with accommodation during final exams.

25.     On December 18, 2024 and December 19, 2024, the District required P.S. to take her final exams, without accommodation. When Plaintiffs complained regarding the lack of accommodation, Defendant McMurray told Plaintiff Mrs. Smith "I practically had to cheat" for P.S. on her "Math Rocks" final.

26.     P.S.'s grades worsened.

27.     P.S. has been suffering severe anxiety in relation to her grades, has been coming home from school crying as a result of having no appropriate accommodations.

28.     Plaintiffs retained legal counsel.

29.     On December 19, 2024, Plaintiffs' legal counsel delivered to Defendants a demand for a 504 Plan meeting. The demand stated with emphasis:

**DO NOT PERFORM ANY ACT OR OMMISSION THAT IS RETALIATORY.**

30.     On January 7, 2024, P.S. returned to school from the Christmas break. One teacher, in front P.S.'s peers, approached P.S. and asked "are you really going to sue the school?" P.S. did not know how to respond.

31.     Later that same day, P.S. walked to her "Math Rocks" class, a supplementary math class instructed by Defendant McMurray in which P.S. was enrolled and had the current grade of a "C."

32.     Before P.S. could enter the classroom, Defendant McMurray confronted P.S. just outside the classroom door. Defendant McMurray accusatorily stated to P.S. "why do you hate me?" and then proceeded to tell P.S. that he could not trust her, and that P.S. should no longer be in his class. Defendant McMurray then allowed P.S. to enter the classroom, prefacing with a threat, only "if I can trust you."

33.     On January 9, 2024, Plaintiffs' legal counsel by letter informed Defendants (as well as the District's special education director) that Defendants' conduct on the preceding school day of January 7, 2024 was in violation of P.S.'s educational privacy rights (FERPA) and constituted unlawful retaliation. Plaintiffs' legal counsel asked that a reunification meeting be held with Defendants, wherein Defendant McMurray would be expected to apologize to P.S. and welcome her into his class without condition.

34.    Plaintiffs (through legal counsel's letter) further informed Defendants with emphasis:

**WARNING: ANY ACT OR OMMISSION WHICH IS POSSIBLE OF BEING CONSTRUED AS DISCOURAGING [P.S.] OR ANY OTHER PERSON ON HER FROM LAWFULLY PURSUING [P.S.]'S DISABILITY RIGHTS SHALL BE CONSTRUED AS RETALIATORY IN VIOLATION OF THE REHABILITATION ACT AND THE AMERICANS WITH DISABILITIES ACT, AND WILL ALSO CONSTITUTE A VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION.**

*Failure to heed this warning will expose both the Soda Springs School District No. 2 and any specific offending individual to liability and severe damages.*

35.    Plaintiffs' counsel received a telephone call from the District's legal counsel. Plaintiffs' counsel, who has a good deal of experience in representing the rights of disabled children against unlawful discrimination, informed the District's legal counsel that Plaintiffs' goal was to simply get their child accommodated, and to clear up Defendant McMurray's improper response to their request for accommodation. The District's legal counsel confirmed her receipt of the Plaintiffs' concerns, and stated she would speak with her client.

36.    On January 13, 2024 P.S. entered her fifth-hour Algebra class, which is taught by Defendant McMurray's spouse.

37.    On entering the classroom, Defendant McMurray's spouse (Mrs. McMurray) approached P.S. in the back of the classroom, asking whether P.S. had been apprised that

she would no longer be taking Algebra during fifth-hour, and that P.S. had been assigned to now take Algebra during sixth-hour.

38.     Confused, P.S. informed Mrs. McMurray that P.S.'s "Math Rocks" class was in sixth-hour.

39.     Mrs. McMurray then informed P.S. that Defendant McMurray had determined that P.S. had "passed" the Math Rocks class and no longer needed to attend.

40.     Still confused, P.S. asked Mrs. McMurray "what am I going to do during sixth hour?" Mrs. McMurray responded by telling P.S. to go and speak with the school's career counselor.

41.     On a phone call, P.S. informed her mother Mrs. Smith, while crying, that she had been "kicked out" of her sixth-hour class as well as her fifth-hour Algebra class. P.S. went to the school career counselor, but the counselor was not immediately available.

42.     P.S. waited to speak with the school's career counselor, and when she was given an audience, Plaintiff Mrs. Smith was also present by telephone. As it turned out, Defendant McMurray had in fact altered P.S.'s grade in the "Math Rocks" class from a C Grade, to a 95% Grade. Several assignments had been exempted from the grade sheet, and there was no grade for P.S.'s final exam in Math Rocks, for which she had obtained a low sixty-one percent (61%) score.

43.     P.S. enrolled in an art class to fill her now empty fifth-hour.

44.    P.S. is overwhelmed, feels hopeless, has a history of self-harm, and as a result of Defendants' actions, is experiencing exacerbated symptoms of anxiety and depression.

## FIRST CAUSE OF ACTION
### Declaratory Relief
### 28 U.S.C. § 2201
(All Defendants)

45.    Plaintiffs incorporate the foregoing paragraphs by reference.

46.    Under the Declaratory Judgment Act:

> [A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

> 28 U.S.C. § 2201. (brackets added).

47.    The Americans with Disability Act expressly forbids retaliation, interference, coercion, or intimidation in response to an individual opposing any practice made unlawful by the Act, or in response to a person encouraging the enjoyment of one or more rights granted or protected by the Act. 42 U.S.C. § 12203.

48.    The Rehabilitation Act incorporates, see 29 U.S.C. 794a(a)(2), the anti-retaliation provision of Title VI of the Civil Rights Act of 1964.

> Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the

conduct of any investigation, hearing, or judicial proceeding arising thereunder.

34 C.F.R. 100.7(e).

49.     The entire state of Idaho is bound by the foregoing laws:

> The state of Idaho hereby renews its acceptance of the provisions and benefits of the act of Congress, entitled "An act to provide for the promotion of vocational rehabilitation of persons with disabilities, other than those who are legally blind, and their return to employment," and further accepts "The Rehabilitation Act of 1973," P.L. 93-112, 93rd Congress, as amended by the "Workforce Innovation and Opportunity Act of 2014," P.L. 113-128, 113th Congress, and all subsequent amendments thereto, and will observe and comply with all requirements of such acts.

I.C. § 33-2301

50.     Because Plaintiffs sought disability accommodations for P.S., Defendants retaliated, intimidated, and coerced P.S., thereby adversely impacting her education.

51.     In direct response to Plaintiffs' demand that the District provide P.S. with a 504 Plan, the District shamed P.S., stating in front of her peers "Are you going to sue the school?" Later that same day, Defendant McMurray shamed and threatened P.S., telling her she was not welcome in class, and had lost the "trust" of the school principal.

52.     The foregoing conduct, standing alone, is sufficient to dissuade a child from pursuing her rights under the Rehabilitation Act and Americans with Disabilities Act, and as such the conduct constitutes clear and unambiguous retaliatory intent.

53.     Once Plaintiffs informed Defendants that the above shaming and threatening of P.S. would not be tolerated, the Defendants removed P.S. from two separate classes of

her peers (Math Rocks, sixth-hour; Algebra, fifth-hour), fraudulently modified her grade (C Grade to a 95%), and compelled P.S. to enroll in a different class not of her preference (Art, fifth hour).

54.    Defendants' intimidation, threats, interference, coercion, and to put simply discriminatory exclusion of P.S. from the benefits of her public education, all because she sought a 504 Plan, is clear and unambiguous retaliation in violation of the Rehabilitation Act and the Americans with Disabilities Act.

55.    The Court should enter declaratory relief, reinstating P.S.'s educational benefits in full, and enjoining Defendants from future retaliation as follows:

   a.  Defendants' conduct constitutes unlawful retaliation in violation of the Rehabilitation Act and the Americans with Disabilities Act.

   b.  P.S.'s registration in the Math Rocks class (sixth hour) is reinstated.

   c.  Defendant District shall take those steps which are necessary to ensure that Defendant McMurray shall have no involvement, control or supervision over P.S.'s general education, special education, or any accommodations afforded to P.S. relative to her disabilities; the District may designate one or more sufficiently qualified administrators to carry out such tasks in relation to P.S.'s education and accommodations.

   d.  Reinstatement of P.S. to the Algebra class (fifth hour);

   e.  Reinstatement of P.S.'s actual grade (Math Rocks, 95% to C);

f.   The District shall not, through its employees, personnel, officers, or agents, engage in conduct that is substantially likely to dissuade P.S. or any other individual from seeking to establish any rights or benefits secured to P.S. by way of the Rehabilitation Act and/or the Americans with Disabilities Act.

**SECOND CAUSE OF ACTION**
**29 U.S.C. § 794**
**Violations of § 504 of the Rehabilitation Act**
(Defendant Soda Springs Joint School District No. 150)

56.     Plaintiffs incorporate the foregoing paragraphs by reference.

57.     The Rehabilitation Act forbids discrimination against disabled individuals by entities which receive federal financial assistance:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

58.     Monetary damages are available under the Rehabilitation Act where the discrimination is done intentionally (i.e. depriving a qualified individual with a disability from one or more benefits offered because the individual is disabled) or with reckless indifference (with knowledge of a substantial likelihood that the discriminatory conduct

would violate a federal right, such as having notice of a need for accommodation and failing to act).

59.    The Defendant, by and through its officers, agents, representatives, and employees, intentionally discriminated against Plaintiff P.S. in violation of § 504 of the Rehabilitation Act.

60.    Defendant refused to provide P.S. with a 504 Plan;

61.    Defendant refused P.S.'s request for accommodation, did not evaluate her need for accommodation, and instead, informed her she was "just lazy";

62.    Defendant refused to provide P.S. with accommodations relative to tests and examinations; and

63.    Additional discriminatory acts and omissions are likely to be discovered hereafter.

64.    As a result of Defendants' foregoing intentional discrimination, P.S. has suffered damages. The amount and quality of damages is to be determined hereafter, by the Jury.

65.    Pursuant to the Rehabilitation Act, Plaintiffs also seek their costs and reasonable attorney's fees.

### <u>THIRD CAUSE OF ACTION</u>
**42 U.S.C. § 12132**
**Violations of Title II of the Americans with Disabilities Act**
(Defendant Soda Springs Joint School District No. 150)

66.    Plaintiffs incorporate the foregoing paragraphs by reference.

67.     Title II of the Americans with Disabilities Act forbids any public entity from discriminating against disabled individuals as to any program, service, or activity offered by the public entity:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
> 42 U.S.C. § 12132.

68.     Monetary damages are available under Title II of the Americans with Disabilities Act where the discrimination is done intentionally (i.e. depriving a qualified individual with a disability from one or more benefits offered because the individual is disabled) or with reckless indifference (with knowledge of a substantial likelihood that the discriminatory conduct would violate a federal right, such as having notice of a need for accommodation and failing to act).

69.     The standards, rights, and remedies of a qualified disabled individual are no less under Title II of the Americans with Disabilities Act than those standards, rights, and remedies provided for under the Rehabilitation Act and governing Federal regulations. See 42 U.S.C. § 12201(a).

70.     The Defendant, by and through its officers, agents, representatives, and employees, intentionally discriminated against Plaintiff P.S. in violation of Title II of the Americans with Disabilities Act.

71.     Defendant refused to provide P.S. with a 504 Plan;

72.     Defendant refused P.S.'s request for accommodation, did not evaluate her need for accommodation, and instead, informed her she was "just lazy";

73.     Defendant refused to provide P.S. with accommodations relative to tests and examinations; and

74.     Additional discriminatory acts and omissions are likely to be discovered hereafter.

75.     As a result of Defendants' foregoing intentional discrimination, P.S. has suffered damages. The amount and quality of damages is to be determined hereafter, by the Jury.

76.     Pursuant to federal law, Plaintiffs also seek their costs and attorney's fees.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Violations of the Fourteenth Amendment
### Equal Protection
(All Defendants)

77.     Plaintiffs incorporate the foregoing paragraphs by reference.

78.     Pursuant to the Fourteenth Amendment of the United States Constitution, no State may "deny any person within its jurisdiction the equal protection of the laws." U.S. const., amend. XIV, Sec. 1.

79.     While disability is not in and of itself a "protected" class, and while education is not in and of itself a "fundamental right," a person acting under the color of state law cannot withdraw state benefits from one person only, for no conceivable rational basis. To

do otherwise violates the Fourteenth Amendment's guarantee to equal protection of the laws.

80.     Acting under the color of state law as Principal of the Soda Springs High School, Defendant McMurray removed P.S. from two (2) of her classes, and fabricated her grade.

      a.  P.S. was able to attend these classes just like any other student;

      b.  P.S.'s disability did not in any way foreclose her ability to attend and participate in these classes;

      c.  P.S. had not violated the District's rules or code of conduct;

      d.  P.S. had not asked to be removed from these classes; and

      e.  P.S.'s removal from these classes was not related to any systemic modification of the classes by the District.

81.     Because Defendant McMurray's conduct denied P.S. equal access to the District's programs and facilities, and there was no rational relationship between Defendant McMurray's treatment of P.S. and a legitimate government purpose, Defendant McMurray's conduct violated P.S.'s right to equal protection under the Fourteenth Amendment of the United States Constitution.

82.     As a result of Defendant McMurray's violation of P.S.'s Fourteenth Amendment right to equal protection, P.S. has suffered damages. The amount and quality of damages is to be determined hereafter, by the Jury.

83.     Pursuant to federal law, Plaintiffs also seek their costs attorney's fees.

**FIFTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – Violations of the Fourteenth Amendment**
**Due Process**
(All Defendants)

84.     Plaintiffs incorporate the foregoing paragraphs by reference.

85.     Pursuant to the Fourteenth Amendment of the United States Constitution, no State may "deprive any person of life, liberty, or property, without due process of law[.]" U.S. const., amend. XIV, Sec. 1.

86.     While education is not in and of itself a "fundamental right," the receipt of a public education is a significant and legally recognized property interest.

87.     Acting under the color of state law, and Principal of the Soda Springs High School, Defendant McMurray interfered with P.S.'s public education.

88.     Defendant McMurray removed P.S. from her Math Rocks class, fabricated her school grade, and removed P.S. from her fifth hour Algebra class.

89.     Defendant McMurray provided no hearing.

90.     Defendant McMurray provided no notice.

91.     Defendant McMurray did not even provide an explanation.

92.     Defendant McMurray's interference with P.S.'s public education, done without any procedural due process, violated P.S.'s right as guaranteed by the Fourteenth Amendment of the United States Constitution.

93.     As a result of Defendant McMurray's actions, P.S. has suffered damages, the amount and quality of which are to be determined by the Jury, at trial.

94.     Pursuant to federal law, Plaintiffs also seek their costs attorney's fees.

### SIXTH CAUSE OF ACTION
**42 U.S.C. § 1983 – Violations of the First Amendment**
**Freedom of Speech**
(All Defendants)

95.     Plaintiffs incorporate the foregoing paragraphs by reference.

96.     Plaintiffs Mr. Smith and Mrs. Smith engaged in the constitutionally protected act of reporting that a public employee was acting contrary to law on matters of public concern: the accommodation of disabled individuals in public education.

97.     Immediately after and because Plaintiffs Mr. Smith and Mrs. Smith made these reports, Defendants subjected Plaintiffs' daughter to embarrassment and intimidation, and then removed their daughter's public benefits and adulterated their daughter's public education grade.

98.     Defendant McMurray did not act alone. Rather, Defendant McMurray acted with the knowledge and assent of the District's Superintendent. Defendant McMurray also acted through the help of another employee, his wife. It is also a known fact within the community that once disabled children reach high school and begin attending the Soda Springs High School, statements by parents that their children are entitled to accommodation will result in their children receiving negative treatment, even to the point of having to remove children from the hostile environment. Wherefore, Defendant

McMurray's actions were not just his own – they were in fulfillment of the District's policy to adversely impact students in response to parental accusations of accommodation violations.

99.    The avoidance of lawful accommodation is not a legitimate institutional goal. Cf. I.C. § 33-2301 (Idaho's agreement to be bound by the Rehabilitation Act); see also I.C. § 33-2002 (compelling each public school district to "provide for the special education and related services of children with disabilities enrolled therein").

100.    The Defendants' conduct in adversely impacting the education of students whose parents report that the District is failing to abide by their children's disability rights constitutes a chilling on the exercise of Plaintiffs' First Amendment rights. Plaintiffs Mr. Smith and Mrs. Smith are not teachers by profession. They rely on the public education of their child, P.S., and immediate reprisals against P.S.'s public education as a result of their own constitutionally protected free speech has the effect of severely curtailing and discouraging Plaintiffs from making such reports.

101.    As a result Defendants' violation of Plaintiffs' First Amendment Rights, Plaintiffs have been damaged.

102.    As a result of Defendant McMurray's actions, P.S. has suffered damages, the amount and quality of which are to be determined by the Jury, at trial.

103.    Pursuant to federal law, Plaintiffs also seek their costs attorney's fees.

## **PUNITIVE DAMAGES**

104.    Plaintiffs incorporate the foregoing paragraphs by reference.

105.    Defendant McMurray did not just act intentionally when he violated Plaintiffs' constitutional rights.

106.    Defendant McMurray in callous fashion disregarded P.S.'s federal and constitutional rights. For instance, Defendant McMurray did not tell P.S. that she was unqualified for accommodation. Instead, Defendant McMurray told P.S., a minor, that she was "just lazy." Similarly, Defendant McMurray did not just tell P.S. that she was unwelcome in his class because of something her parents had done. Rather, Defendant McMurray told P.S. he could no longer "trust you."

107.    All of Defendant McMurray's actions were at P.S.'s detriment, not his own.

108.    For instance, rather than obtain perhaps a substitute teacher and allowing his emotions to settle before acting rashly, Defendant McMurray promptly and fraudulently modified P.S.'s grade and removed her from his class without even so much as informing P.S. of the material changes to her schedule.

109.    Each of the foregoing circumstances show that Defendant McMurray was acting intentionally, but also recklessly, callously, and even maliciously violating the Plaintiffs' federal and constitutional rights.

110.    These conclusions are further buttressed by the fact that Defendant McMurray personally received Mr. and Mrs. Smith's complaints of his misconduct, each

containing conspicuous warnings. After receiving each of those stark warnings, Defendant McMurray proceeded to discriminate, retaliate, and violate the Plaintiffs' federal and constitutional rights as described earlier in this Complaint.

111.    Defendant McMurray's actions were done in his position as a principal, took place with knowledge of the Defendant District's superintendent, and were effectuated through the use of additional Defendant District employees. This would not happen absent a policy to discriminate against disabled students and silence their advocates.

112.    Based on the foregoing circumstances, punitive damages against Defendants, under 42 U.S.C. § 1983 are warranted and appropriate. See *Smith v. Wade*, 461 U.S. 30, 50, 103 S. Ct. 1625, 1637, 75 L. Ed. 2d 632, 648 (1983) ("reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages"); see also *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) ("malicious, wanton, or oppressive acts or omissions are within the boundaries . . . for assessing punitive damages").

## JURY DEMAND

113.    In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

The Court should award Plaintiffs with the following relief, in addition to any relief that the Court deems just and equitable under the circumstances:

1.      General and special damages;

2.      Punitive damages;

3.      Plaintiffs' costs and reasonable attorney's fees as provided by statute, rule, or equitable circumstances;

4.      Pre-judgment and post-judgment interest;

5.      Declaratory relief, as prayed for in Plaintiffs' First Cause of Action, *surpa*.

DATED this <u>29th</u> day of January, 2025.

                              BEARNSON & CALDWELL, LLC


                              /s/ Aaron K. Bergman
                              Aaron K. Bergman
                              *Attorneys for Plaintiffs*