UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CODY SMITH and HOLLY SMITH, individually and for and on behalf of their daughter, P.S., a minor,<br><br>    Plaintiffs,<br><br>v.<br><br>JESS MCMURRAY, an individual; and SODA SPRINGS JOINT SCHOOL DISTRICT NO. 150, a public entity,<br><br>    Defendants. | Case No. 4:25-cv-00052-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are Plaintiffs' Cody Smith and Holly Smith's (collectively "Plaintiffs") Motion for Preliminary Injunction ("PI") (Dkt. 18), two Motions to Seal from Defendants Jess McMurray and Soda Springs Joint District No. 150 (collectively "Defendants") (Dkts. 10; 26), and Plaintiffs' Objection to Filing of Documents Under Seal (Dkt. 22).

The Court issued an ex parte Temporary Restraining Order ("TRO") on January 20, 2025, for 14 days and set a hearing for February 13, 2025. Dkt. 3. When the Court received Plaintiffs' PI Motion, it vacated the TRO hearing and extended the TRO for an additional 14 days to allow the parties to prepare for a preliminary injunction hearing. Dkt. 20. On February 26, 2025, the Court held an evidentiary hearing and took the PI Motion under advisement. Dkt. 36. Defendants agreed to the extension of the TRO until the Court was

able to reach a final decision on the merits of the PI Motion, pending written closing arguments from both parties. Dkt. 37, at 6.

Closing arguments were submitted by both parties on March 12, 2025. Dkts. 38; 39. For the reasons set forth below, Plaintiffs' Motion for Preliminary Injunction is GRANTED in PART and DENIED in PART. Defendants' Motions to Seal (Dkt. 10; 26) are GRANTED. Plaintiffs Objection to Defendants' Filing of Documents under Seal (Dkt. 22)   is GRANTED in PART and DENIED in PART.

## II. BACKGROUND

Plaintiffs are the parents of P.S., a sophomore at Soda Springs High School. P.S. has various disabilities, including anxiety, depression, and Attention Deficit Hyperactive Disorder, which necessitate additional accommodations for her to be successful in school. During P.S.'s freshman year, Plaintiff Holly Smith requested that the School District provide P.S. with official accommodations through a § 504 plan.[1] An original meeting took place on December 19, 2023, to begin developing that plan. After several months delay, on March 6, 2024, Holly was able to meet with McMurray—the school principal—and other administrators to discuss the finalization of that plan. The ultimate result was McMurray claiming an official plan was not needed, but that P.S. would be provided with informal accommodations such as noise-cancelling headphones and a quiet test-taking room.

---

[1] A 504 plan is a formal plan developed by a school to provide accommodations and support for a student with disabilities. It is not a special education program or individual education plan—although there is some general overlap between all three plans—but rather a civil rights plan under Section 504 of the Rehabilitation Act of 1973.

MEMORANDUM DECISION AND ORDER - 2

P.S. began her sophomore year with these informal accommodations. She had previously met with the school counselor to assist in her growth and development, but her parents withdrew their consent for the meetings when they enrolled her in private counseling outside of school. Plaintiffs allege the school counselor continued to meet with P.S. against their wishes and also encouraged her to contact Child Protective Services, which Plaintiffs reported to McMurray. When Holly and Cody spoke with McMurray about the issue, Holly felt McMurray was disrespectful towards them, particularly about their parenting, and further, that he was dishonest about the nature of P.S.'s meetings with the school counselor. After Plaintiffs spoke with McMurray, another teacher denied P.S. the opportunity to take a test in the previously-provided resource room.

Shortly before Christmas break in December 2024, P.S. took her final examinations, including for a course she had been taking from McMurray entitled "Math Rocks!" The course was a new program being offered by the District, and a student could voluntarily enroll in the course when their math scores were "well below proficient." Dkt. 14, at 2. If a student satisfactorily completed a minimum competency assessment during the course, they could exit the course.

P.S. completed the minimum competency assessment during her final examinations. Critically, the parties differ vastly on whether she successfully passed the test. P.S. scored in the 60% range, which Defendants contend is a passing score.[2] Accordingly, and after

---

[2] McMurray describes the MathRocks! procedures as a "fluid process . . . to help kids and get them up to grade level . . . so we definitely had to change some things as we went." Dkt. 37, at 151. This was the first year the program was implemented to attempt to get students up to grade level, pass the minimum competency exam, and ultimately pass their normal math courses. The original score to pass the exam was 70%. McMurray testified that the passing score was essentially lowered to the 60s by the time P.S. took the

finalizing grades which brought P.S.'s final grade up to a 95%,[3] McMurray followed standard procedure in unenrolling her from the course for the following semester. Plaintiffs vehemently oppose this version of events. Rather, they claim P.S. scored a 60%, which was so low that McMurray requested an after-school meeting with her to discuss the score.

P.S. did meet with McMurray, and he went through her exam with her. This was something that commonly happened with students who obtained a 60% or higher, but who did not hit the 70% mark. McMurray walked through questions where P.S. erred and then gave her a similar problem to try again on her own. P.S. testified McMurray told her she was right on the brink of passing, and she might not need to reenroll in the MathRocks! Course in the future. Before meeting with P.S., McMurray sent an email to his wife, P.S.'s algebra teacher, stating he would be meeting with P.S. and one other student to "one-on-one" them out of MathRocks!.

Almost simultaneously with P.S.'s final exams, on December 19, 2024, Plaintiffs had obtained counsel and demanded a 504 plan meeting for P.S. to obtain official accommodations. As part of that demand, Plaintiffs' counsel emphasized that Defendants

---

exam on December 19, 2024. The process by that point, according to McMurray, was to meet with students one-on-one when they scored in the 60s and work on problems until they got the equivalent of a 70% passing grade. However, he also testified that district policy set a passing score at 60%, so this "one-on-one" process was in line with that policy.

[3] Holly contends P.S.'s grade in MathRocks! during the end of semester 1 was a C+, particularly due to missing assignments. Thus, she contends McMurray fabricated P.S.'s grades (apart from the minimum competency exam) once the family started formally seeking accommodations to justify removing her from MathRocks! At the hearing, Defendants provided a document from Powerschool which indicated the last time—as least as of January 5, 2025—McMurray changed P.S.'s grade in MathRocks! was November 25, 2024. Dkt. 37, at 190–91. This was before the final competency exam was administered and any legal action was initiated by Plaintiffs. Plaintiffs objected to the admission of this document based on foundation and hearsay. The Court will address this issue *infra*.

should not perform any act or omission that could be considered retaliatory. The letter gave the District until December 30, 2024, to makes progress towards the demands or further action would be taken. The District and school began Christmas Break, and school was not set to resume until January 7, 2025.

On the first day back to school after Christmas Break, Holly spoke with McMurray by phone about her formal request for a 504 plan meeting. During that call, which Holly recorded, McMurray can be heard stating he went over the MathRocks! exam with P.S. one-on-one in the library, and he "kind of cheated for her, because she didn't really pass the test." Pls.' Ex. 6; 07:57–08:03. Holly also told McMurray she did not want him participating in the creation of P.S.'s 504 plan due to their previous issues.

P.S.'s second semester schedule had her initially placed in sixth hour algebra, taking second semester Spanish 1, and not having MathRocks! on her schedule at all. She visited with Jennifer Collins, the school counselor in charge of scheduling, early in the day, asking to be placed back in MathRocks! because she wanted to improve her math skills. P.S. was also ineligible for the second semester of Spanish 1 because she had not completed the first semester of the course. Collins therefore placed P.S. back in fifth hour algebra and sixth hour MathRocks! McMurray's wife, who taught P.S.'s algebra class initially indicated P.S. was in the wrong course when P.S. arrived for fifth hour algebra, but after P.S. explained she had changed her schedule, she was allowed to stay for the class.[4]

---

[4] McMurray's wife had printed out a student list the morning of January 7, 2025, which indicated P.S. was now in her sixth hour algebra class. It was not uncommon for students to move between periods semester to semester.

Later that day, P.S. attempted to attend her MathRocks! course. Plaintiffs allege McMurray asked to speak with P.S. out in the hallway, inquiring why she hated him, why she was suing the school, and whether he would be able to trust her if he allowed her to resume the MathRocks! course. Plaintiffs claim this was retaliation for the demand letter sent in December, and Plaintiffs' counsel sent a follow-up letter on January 9, 2025, which accused McMurray of retaliation. In this second letter, Plaintiffs demanded a 504 plan meeting be set by January 10, 2025, and also that McMurray apologize for his retaliatory behavior. McMurray testified the conversation in the hallway was him just expressing his shock that P.S. would want to continue with MathRocks! because she had essentially graduated from it. Dkt. 37, at 178.

On January 13, 2025, P.S. attempted to attend her MathRocks! course but discovered she had been removed from the course,[5] that her algebra course was moved to the hour she had been taking the MathRocks!, and that she needed to find a class to fill her now-empty fifth period. The next day, the District contacted Plaintiffs to schedule a 504 plan meeting but were referred to Plaintiffs' counsel. Accordingly, on January 15, 2025, counsel for Defendants attempted to contact counsel for Plaintiffs to schedule a meeting but received no reply. Between that initial contact and January 30, 2025, Defendants' counsel attempted

---

[5] Defendants contend, after McMurray finalized grades, P.S.'s final grades amounted to a 95% in the course, despite the fact she previously had a C in the course, and her final examination grade was a 60%. As justification, Defendants explain none of the grades reflected online to parents are permanent until final changes are made, and the ultimate scores reflect P.S.'s true performance. According to Collins, McMurray contacted her directly on January 10, 2025, and requested P.S. be removed from the MathRocks! course.

to schedule a 504 plan meeting with Plaintiffs' counsel five separate times, and the District attempted to schedule a meeting directly with Plaintiffs four times.[6]

On January 29, 2025, Plaintiffs filed the instant suit (Dkt. 1) and an ex parte Motion for TRO (Dkt. 2). The Court granted the Order but limited it to allowing P.S. to be reinstated into her MathRocks! class and returned to her fifth hour algebra. Dkt. 3. The Court set a TRO hearing for February 13, 2025.[7] On February 11, 2025, Plaintiffs filed a Motion for Preliminary Injunction (Dkt. 18). As a result, the Court found good cause to extend the TRO an additional 14 days to allow the parties to prepare for a preliminary injunction hearing, which was set for February 26, 2025.

Since the filing of the Motion for Preliminary Injunction, the special education director with the Soda Springs School District has been working with P.S. to establish a formal 504 plan. McMurray has not been involved in those meetings. Additionally, through informal communications with counsel, the Court is aware that the MathRocks! course will no longer be offered going into the 2025-2026 school year. Plaintiffs are requesting a preliminary injunction to last the duration of this case which would extend the TRO indefinitely and preclude McMurray from having any contact with P.S. or any involvement in testing, grading, or assessing her education. Less applicable now, Plaintiffs are also seeking a new instructor for MathRocks!.

---

[6] Plaintiffs repeatedly referred the District to their attorney, and Plaintiffs' counsel never responded to any requests for a meeting.

[7] Plaintiffs claim that McMurray had once again retaliated against P.S. by staring directly at her while informing the MathRocks! course a few days prior to the hearing that he wouldn't be able to be with them in class on Thursday (implying his attendance at the hearing) but that he would "much rather be here." Dkt. 18, at 9. Defendants contend McMurray was referring to a vacation he was planning on taking instead.

### III. LEGAL STANDARDS

#### A. Preliminary Injunction

As discussed when the Court issued the original TRO, injunctions and restraining orders are both governed by Federal Rule of Civil Procedure 65 and must both satisfy the same criteria. A plaintiff seeking a preliminary injunction or a temporary restraining order must establish: "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (cleaned up) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)). The function of a preliminary injunction is to preserve the status quo—the last uncontested status between the parties before the current controversy—pending a final determination on the merits of the case. *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).

The Ninth Circuit has further instructed district courts to evaluate these factors "on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (cleaned up).[8] This approach permits the imposition of a preliminary injunction where there are "serious questions going to the merits," and the

---

[8] As the Ninth Circuit has noted, there is a growing circuit split on the question of whether the sliding-scale approach is consistent with the Supreme Court's opinion in *Winter*. *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 n.12 (9th Cir. 2024). The Court will continue to apply the sliding-scale approach because the Ninth Circuit has expressly held the approach is consistent with *Winter*. *Id.*

balance of hardship "tips sharply toward the plaintiff," assuming the other two elements of the *Winter* test are also met. *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 490–91 (9th Cir. 2023) (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). The "serious questions" standard is satisfied when a plaintiff raises questions "that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *Id.* at 497 (cleaned up); *see also Fellowship of Christian Athletes*, 82 F.4th at 684 (explaining a showing of "serious questions" is "a lesser showing than likelihood of success"). Still, even when the plaintiff raises legal questions not directly answered by past precedent or requiring further investigation, a court cannot forgo the merits assessment. *Petrick*, 68 F.4th at 497.

A key difference between a TRO and a preliminary injunction is its respective duration. A TRO is typically entered by the Court for a limited time, while a preliminary injunction may extend until the end of the lawsuit, which could be months, if not years. *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 n.1 (D. Or. 2018). When granting a preliminary injunction, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). Under Rule 65, the Court must: (1) state the reasons why the preliminary injunction issued; (2) identify its terms specifically; and (3) describe in reasonable detail any acts restrained or required. Fed. R. Civ. P. 65(d)(1)(A–C)

Additionally, under Rule 65, the Court may only issue a preliminary injunction where the moving party provides a security, to pay any costs and damages sustained by any

party if they are wrongfully enjoined or restrained, in an amount the Court deems proper. Fed. R. Civ. P. 65(c). The Court may exercise its discretion to waive the bond requirement in the absence of evidence that the enjoined party will suffer damages as a result of the injunction. *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). A bond is not required if the enjoined party fails to establish the type and amount of damages it will incur if enjoined. *Id.*

## B. Retaliation Claim

Plaintiffs base their request for a preliminary injunction on Defendants' alleged retaliatory behavior, as they did when moving for a TRO. The Rehabilitation Act expressly adopts the retaliation provisions of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794a(a)(2) (incorporating Civil Rights Act of 1964); *see also* 34 C.F.R. 100.7(e) (forbidding retaliation). Title II of the ADA, on the other hand, expressly forbids interference, coercion, or intimidation in response to an individual opposing any practice made unlawful by the Act, or in response to a person encouraging the enjoyment of one or more rights granted or protected by the Act. *See* 42 U.S.C. § 12203. Whether under the Rehabilitation Act or the ADA, the elements for a retaliation claim are the same: (1) involvement in a protected activity; (2) an adverse action; and (3) a causal link between the two. *See Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 849 (9th Cir. 2004) (stating elements of retaliation under the ADA); *see also Coons v. Sec'y of the United States Dep't of the Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (stating elements of retaliation under the Rehabilitation Act).

### C. Motion to Seal

There exists a "'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). There is a strong presumption in favor of public access to judicial documents, unless the record is one "traditionally kept secret." *Id.* (citing *Foltz v. State Farm Mut. Auto. Ins., Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Where possible, parties should tailor their sealing request to include only those portions of the subject document containing sensitive information. *Foltz*, 331 F.3d at 1139; *Tan v. Konnektive Rewards, LLC*, 2023 WL 2336893, at *6 (S.D. Cal. Mar. 2, 2023). Particularly important here, "the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, protects educational records and personally identifiable information of students from improper disclosure." *Cherry v. Clark Cnty. School Dist.*, 2012 WL 4361101, at 5 (D. Nev. Sept. 21, 2012) (cleaned up).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiffs have shown that they engaged in a protected activity; namely, requesting disability accommodation for P.S. See *Coons*, 383 F.3d at 887 (holding a request for accommodation is a protected activity). So, the Court must now turn to whether there has been an adverse action.

The timeline of events in this case is especially important when looking at whether there has been an adverse action causally linked to a protected activity. The Court will briefly note the events it finds particularly important.

First, P.S. scored in the 60% range for her minimum competency exam. On December 19, 2024, the last day of first semester, McMurray met with P.S. to go over her exam, and he later admitted to "kind of cheating for her because she didn't really pass the test." Pls.' Ex. 6; 07:57–08:03 However, even though McMurray seemed to admit that the one-on-one process of passing students out of MathRocks! was essentially cheating, it was a common practice with all students in the course. Dkt. 37, at 160. On that very same day, Plaintiffs sent a demand letter for a 504 plan meeting.

On January 7, 2025, the first day back to school in semester two, P.S. had a very eventful day. She initially started the day without MathRocks! on her schedule but worked with a school counselor to get herself placed back in the class. When P.S. arrived at her MathRocks! course, McMurray asked to speak with her outside. While the details of that conversation are disputed, P.S. was uncomfortable enough with the conversation that it resulted in a letter from her parents' attorney just two days later warning against retaliation. However, she was allowed to stay in the course. Also on that same day, McMurray had a phone conversation with P.S.'s mother, Holly, that was contentious.

Perhaps most importantly, only one day after receiving the retaliation letter from Plaintiffs' counsel on January 9, 2025, McMurray personally contacted the school counselor and asked that P.S. be removed from his MathRocks! course. Plaintiffs and P.S. had no warning of the removal, and it wasn't until the following Monday that P.S. realized she had been removed from the course.

Based on these events alone, there is sufficient evidence to establish there is a "serious question" as to the merits of Plaintiffs' claim for retaliation. Most persuasive to

the Court are the events that unfolded after January 7, 2025. As the Court understands it, MathRocks! was less important as a stand-alone course, but the minimum competency exam had to be passed in order for a student to receive credit in their mainstream math course. In P.S.'s case, she needed to pass the exam to receive credit in her algebra course. While the process to "pass" the minimum competency exam seems rather fluid, it appears McMurray followed the same process he had employed with other students to help P.S. pass. Thus, passing her out of the course based on the one-on-one process does not indicate P.S. was retaliated against.

However, it was clear that P.S. was interested in retaking the MathRocks! course in her second semester. While McMurray thought it was odd for P.S. to want to take an additional semester, as it would be like "coming back after graduation," he ultimately allowed her to resume the course when she returned to class on January 7, 2025. McMurray made no indication, at that time, that he might have to verify whether P.S. could take the course again after "passing" the minimum competency exam, or that P.S. should otherwise expect his decision to change. It was only *after* receiving further correspondence from Plaintiffs' counsel—and just one day after receiving that correspondence—that McMurray requested P.S. be removed from his course.

Candidly, the Court is not as concerned for purposes of the preliminary injunction about whether McMurray adjusted P.S.'s other grades, besides the minimum competency exam, in the MathRocks! course. As the Court understands it, the only criteria for passing the course was the final score on the minimum competency exam. While it is concerning that McMurray had to essentially cheat for students, including P.S., to attain that passing

score, the minimum competency exam itself was the basis on which McMurray justified removing P.S. from the course, not her other grades.[9]

There is also not a strong correlation, prior to January 7, 2025, between P.S.'s score on the minimum competency exam and any retaliation for requesting a 504 plan meeting through Plaintiffs' attorney. It is likely McMurray did not know about the letter from counsel prior to meeting with P.S. on December 19, 2024, but he still indicated to P.S. that she might not have to take the course again due to her meeting with him one-on-one. McMurray had followed this same one-on-one process with at least a dozen other students. However, McMurray's willingness to let P.S. return to the course only to remove her without notice after tense exchanges with P.S., her parents, and Plaintiffs' counsel show an adverse action was taken against P.S. with a causal link established between the letter from counsel on January 9, 2025, requesting a 504 plan meeting and the eventual removal of P.S. from MathRocks! on January 10. *See Bell v. Clackamas County*, 341 F.3d 858, 865

---

[9] The Court's conclusion on this matter necessarily minimizes the importance of Defendants' Exhibit B at this stage which is the document allegedly showing P.S.'s grade in MathRocks! hadn't been adjusted since November 25, 2024. . However, the Court makes two notes. First, the Federal Rules of Evidence ("FRE") do not strictly apply at the preliminary injunction stage. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1189–90 (9th Cir. 2024). That being said, the Court does find there are numerous problems with the exhibit. To the extent Defendants argue FRE 803(6) applies as an exception to the rule against hearsay, McMurray is not a qualified witness under 803(6)(D). While a low bar, a qualified witness must understand the record-keeping system. *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993). McMurray testified at the hearing that Powerschool "bigwigs" and Deanne Barker, the Powerschool administrator, had to "get into some code stuff – I don't know the fancy stuff they had to do – to show the last time that a grade was changed in MathRocks!" Dkt. 37, at 190. This does not indicate an understanding of the system, or what Exhibit B could potentially indicate. FRE 807 would also not apply because, as the Court has found at this stage, it is not evidence of a material fact. Thus, the document is hearsay. Also, Defendants failed to provide adequate foundation or authentication for the document. Barker was not called, nor anyone from Powerschool, to verify the document was what the Defendants claimed it to be, despite being the parties who allegedly retrieved it. Additionally, the document was not as self-explanatory as Defendants claim, with it being unclear what day the document was retrieved and what all the data fields actually indicate. Should the document become relevant in the future, these barriers would need to be overcome.

(9th Cir. 2003) (finding "temporal proximity between protected activity and an adverse []
action can by itself constitute sufficient circumstantial evidence of retaliation in some
cases," in the context of Title VII and within 42 U.S.C. §§ 1981 and 1983 claims) (cleaned
up)).

In conclusion, there are serious questions going to the merits of Plaintiffs' retaliation
claim, and this element weighs in favor of granting a preliminary injunction.

### B. Irreparable Harm

The deprivation of a child's free, appropriate, and public education as guaranteed
under the Rehabilitation Act, 34 C.F.R. § 104.33, cannot be completely remedied by
economic damages. *See Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th
Cir. 1984) (holding financial injury is not "irreparable harm if *adequate* compensatory
relief will be available in the course of litigation") (emphasis added)).

In granting the initial TRO, the Court relied on both *Cosgrove v. Board of Educ. of
Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375 (N.D.N.Y. 2001) and *N.D. v. Reykdal*, 102
F.4th 982 (9th Cir. 1982) to find P.S. was facing irreparable harm without injunctive relief.
Both those cases deal with students who had individualized education plans ("IEPs") and
who were then removed from their special education courses. At the preliminary injunction
stage, Defendants have argued these cases are not informative because the MathRocks!
course is not a special education course, and P.S. has never been on an IEP. Dkt. 18, at 9.
Therefore, denying P.S. access to her MathRocks! course cannot alone constitute
irreparable harm.

Turning to the Rehabilitation Act directly, it guarantees a "free appropriate public education to each qualified handicapped person." 34 C.F.R. § 104.33(a). A handicapped person is defined as any person with a physical or mental impairment, including a mental or psychological disorder. 34 C.F.R. § 104.3(j). "[A]n appropriate education is the provision of *regular or special education* and related aids and services . . . designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met[.]" 34 C.F.R. § 104.33(b)(1).

The Act is not limited to the provision of special education courses. *Cosgrove* and *Reykdal* are informative because, although MathRocks! is not a special education course, the deprivation of P.S.'s enrollment in the course caused the same type of harms as those experienced by the Plaintiffs in those cases. In particular, P.S. has a history of self-harming due to depression and anxiety. She has repeatedly expressed her discomfort and distress with the experiences in both MathRocks! and with McMurray specifically after her parents started formally seeking accommodations. Holly also expressed her concern that P.S. would turn to self-harm should circumstances continue to worsen.

As Plaintiffs repeatedly emphasized in their closing arguments, all P.S. wants is to go to school. Plaintiffs have provided sufficient evidence that P.S.'s already-existing mental disabilities are being exacerbated by the ongoing litigation, pending accommodations approval, and the staff and faculty's treatment of P.S. based on those events. While the Court cannot remedy all the adversity that P.S. will face as matters are sorted out, it was still appropriate for her to remain in the MathRocks! course until the end of the semester,

preventing further disruption to her education, and to protect her physical and mental safety.

### C. Balance of Equities and Public Interest

Defendants primarily object to the scope of Plaintiffs' proposed preliminary injunction, and perhaps rightfully so. They make persuasive arguments as to the potential difficulties and burden that would be imposed on Defendants if the Court granted Plaintiffs' PI as requested. *See* Dkt. 21, at 11–13. The Court acknowledges the very real concerns associated with placing substantial restrictions on McMurray both personally and professionally which would heavily interfere with the inner workings of a public school for which he is the principal. However, the Court intends to greatly limit the scope of the PI in this case such that Defendants concerns are largely moot. With the understanding that the Court will limit the terms of the PI as set forth below, it analyzes the balance of equities and public interest with that knowledge in mind.

The Court does not intend to insert itself into matters of public education any further than is absolutely necessary to preserve the status quo until this case can be resolved on the merits. The very nature of preserving the status quo—or returning to the last undisputed position between the parties—allows the parties to avoid irreparable harm while also not requiring them to do more than what they were successfully doing in the past. Thus, the Court will only require P.S. to be enrolled in the MathRocks! course as she would have been had this dispute not occurred. The Defendants will not face an unduly heavy burden, because had the dispute never happened, they would have gone on providing the

MathRocks! course to P.S. in this manner.[10] Thus, the balance of equities weighs in favor of the PI.

The public interest is also served by the issuance of a limited PI. There is a great public interest in the provision of fair and complete public education for all students and ensuring that all students are provided with such opportunities serves the public interest. Additionally, because the PI is limited in scope, the public interest will not be harmed by any inappropriate insertion of the courts in the matters of public-school administration. Furthermore, the education of other students will not be disrupted on behalf of one student.

### D. Scope and Bond

As hinted at above, the Court does not intend to grant the PI in the form requested by Plaintiffs. Plaintiffs request not only that the Court extend its TRO order, which requires P.S. continue her enrollment in fifth-hour algebra and sixth-hour MathRocks!, they also request the Court order McMurray to have "no contact with P.S., directly or indirectly" and "no involvement, directly or indirectly, in testing, grading, or assessing P.S. in relation to her education," and that the District have three school days to find a new instructor for MathRocks!. They request such an injunction continue for the duration of the proceedings, with contempt to follow for any violations.

---

[10] Even though Defendants contend P.S. had "tested out" of the course, despite McMurray admittedly cheating to help her do so, this is a contested position. The last uncontested position of the parties was when P.S. was enrolled in MathRocks! and had not yet passed the minimum competency exam. McMurray allowed P.S. to return to the course on January 7, 2025, the procedures for MathRocks! were "fluid," and it is reasonable to assume the already-occurring course would not be overburdened by P.S. continuing another semester. So, allowing P.S. to continue in the course is not unduly burdensome for Defendants and balances the equities in this case.

The scope of these requests is vastly too large. The Court cannot emphasize enough the importance of using a PI to maintain the status quo. The Court will not use a PI to mandate the hiring and firing of any faculty or staff, constructively or not, or the reorganization of the inner workings of a high school. The Court does, however, feel it is appropriate for P.S. to continue with her education as she would have had the instant disputes never arisen. Therefore, the Court will grant a PI that extends the TRO in this case.[11]

The Court understands, especially considering these issues are largely moot heading into a new school year where the MathRocks! course is not even being offered, that this limited injunction offers little relief. However, moving into the new school year also provides an opportunity for Plaintiffs and P.S. to arrange her schedule such that McMurray can have as limited a role as possible in her education. Additionally, the Plaintiffs are working with the District to obtain an official 504 plan for P.S. If additional disputes arise moving forward, they may be addressed by the Court or the parties when the time comes. Until then, the Court cannot justify interfering with McMurray's personal or professional life to such an extent as requested here.

As a final note, the Court will not require a bond from the Plaintiffs in this case. There is no indication that Defendants will suffer any sort of damages from P.S. continuing

---

[11] The TRO was extended for this purpose pending the ultimate resolution of the instant Motion, and the Court left to P.S.'s discretion whether to continue with the course despite McMurray remaining as the instructor. The academic year has now ended, and the MathRocks! course is no longer being offered. Thus, while the timing of this preliminary injunction is a bit odd, it is important for the Court to set forth its reasoning that P.S. is entitled to injunctive relief in the form of continuing with her MathRocks! course, whether fashioned as a TRO or preliminary injunction.

in the MathRocks! course. Thus, Defendants have failed to establish the type and amount of damages they will incur if enjoined, and no bond will be ordered.

### E. Motions to Seal

Both of Defendants' Motions to Seal request they be allowed to publicly file P.S.'s educational records as redacted versions to exclude her personal information such as name and student number. This is a common, and indeed mandated, practice under FERPA, and the Court will grant the two unopposed Motions accordingly.

Plaintiffs' Objection to Defendants' Filing of Documents under Seal (Dkt. 22) is related to docket 14, which Defendants filed under seal with no accompanying Motion to Seal. By doing so, 10 different documents are being wholly withheld from the public. First, without an accompanying Motion to Seal, the documents should not have been filed under seal in the first place. It has been six months since Plaintiffs lodged their objection to this oversight, and Defendants have made no attempt to correct the issue.

Second, after reviewing the documents under seal, it does not seem like all the documents can be properly sealed. As indicated above, the public does have a right to access public documents, and with no reasons provided by Defendants as to why these documents should otherwise be sealed, it is not appropriate to deprive the public of its right. However, the Court does note that some of the documents reveal P.S.'s name and other personal information. In light of the discussion above about FERPA's traditional protection of minor students' information, the Court will give Defendants 7 days to file a Motion to Seal and also file redacted versions for the public record of any documents at docket 14

they would like to remain sealed to ensure the protection of P.S.'s privacy. Apart from this exception, the documents will be unsealed.

## V. CONCLUSION

Plaintiffs have made a sufficient showing that injunctive relief is warranted such to ensure P.S. receives an appropriate public education. While that relief is limited, at this time, to an extension of the TRO previously entered in this case, P.S. was permitted to finish her second semester of sophomore year in the MathRocks! course, which prevented any irreparable harm from occurring.

The Court will not extend a preliminary injunction which limits McMurray's contact with P.S. or participation in her education at this time. There has not been a sufficient showing that such relief is warranted, and the Court must balance the interests of all parties, including the public, in fashioning its relief. To fully grant Plaintiffs' Motion for Preliminary Injunction at this stage would result in a great burden to McMurray, the school, and the District. The Court would also be interfering substantially with the administrative decisions of the school, which would be inappropriate. Should further, more egregious, instances of retaliation take place between Defendants and P.S. heading into the new school year, the Court can address those issues as they arise.

Thus, while the Court is partially granting Plaintiffs' Motion for Preliminary Injunction, it is only to the extent that P.S. was allowed to finish her sophomore year in MathRocks!. This decision should not be construed in any way as requiring the District to continue to provide the MathRocks! course into the new school year.

## VI. ORDER

1. Plaintiffs' Motion for Preliminary Injunction is **GRANTED** in **PART** and **DENIED** in **PART**.

   a. The TRO in this case (Dkt. 3) is extended, but its terms have been met by the end of the 2024-2025 school year.

   b. The Motion as it relates to Jess McMurray and his contact with, or participation in, P.S.'s education is denied.

2. Defendants' Motion to Seal (Dkt. 10) is **GRANTED**.

3. Defendants' Motion to Seal (Dkt. 26) is **GRANTED**.

4. Plaintiffs Objection to Defendants' Filing of Documents under Seal (Dkt. 22)  is **GRANTED** in **PART** and **DENIED** in **PART**.

   a. Defendants shall have seven (7) days from the issuance of this order to file a Motion to Seal and also supply redacted copies of any documents related to P.S.'s private information contained in docket 14.

   b. After the Court's final decision on the Motion to Seal filed in compliance with paragraph 4(a), any documents, or portions of documents, filed at docket 14 which are not subject to the Motion to Seal will be unsealed.

DATED: August 8, 2025

David C. Nye
Chief U.S. District Court Judge